IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| ERNEST BARNETT, ERNEST JOHNSON, ) <br> SYLVESTER ROSE, CEDRIC MCCANTS, ) <br> BYRON WEEKS, UNDRAE ARMSTRONG, ) <br> TONY SPENCER, and WAVLEY SANDERS, ) <br> ) <br> *Plaintiffs,* ) <br> ) <br> vs. ) <br> ) <br> REYNOLDS, INC., ) <br> ) <br> *Defendant.* ) | Civil Action Number: <br> 01-C-1865-S |

## MEMORANDUM OPINION

Before this Court is Plaintiff Ernest Barnett's Motion for Partial Summary Judgment on Promotion Claims (Document 28). For the reasons elaborated herein, this Court will **GRANT** Plaintiff's Motion for Partial Summary Judgment.

### I. STATEMENT OF THE FACTS

This lawsuit is brought by eight (8) Plaintiffs – Ernest Barnett, Ernest Johnson, Sylvester Rose, Cedric McCants, Byron Weeks, Undrae Armstrong, Tony Spencer, and Wavley Sanders. All Plaintiffs were employed by Defendant Reynolds, Inc., a sewer repair business involved in construction and excavation work. (Williams Aff. at p. 31.) Reynolds employs approximately 700 employees company-wide.[1] (*Id.* at p. 29.)

---

[1] Defendant Reynolds apparently does not have a human resources department or policies in place regarding racial discrimination. (Plaintiffs' Reply to Defendant's Opposition to

1

All Plaintiffs are African-American males alleging race discrimination and/or retaliation in the workplace on account of race. (*See* Complaint; Plaintiffs' Request for Admissions, Document 22). Plaintiffs have brought suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1981 and 2000(e) *et seq.* as amended by the Civil Rights Act of 1991. (*See* Plaintiff's Complaint, Document 1, at ¶¶ 1, 2, 4.)

Plaintiff Barnett's currently pending motion for partial summary judgment asserts a claim of discrimination in promotion under Title VII & Section 1981. (Plaintiffs' Opposition to Defendant's Motion for Summary Judgment, Document 47, at p. 3.)

Plaintiff Barnett was hired by Defendant as a truck driver and laborer on February 28, 2000. (Barnett Aff. at p. 8.) Barnett's employment was terminated by Defendant on May 9, 2001 for, among other things, insubordination. (*See* Mikah Aff.)

Plaintiff Barnett timely filed his charge of race discrimination within one hundred and eighty (180) days of the alleged discriminatory activity and filed the Complaint in this action within ninety (90) days of the receipt of the effective date of the Right to Sue Letter from the EEOC. (Amended Complaint, Document 7, at ¶ 2.) Plaintiff's charge of discrimination argued that Defendant "promoted a white employee with no experience in laying pipes to a supervisory position [while Plaintiff Barnett] was not offered or given the opportunity to be promoted to that supervisory position [and that Plaintiff Barnett was] being paid a disparate wage, while similarly situated white employees [were] being paid substantially more doing the same job." (Barnett's EEOC Charge of Discrimination, Exs. 9-10.)

Barnett's promotion claim grows out of the promotion of David McCurry to the position

---

Plaintiff's Motions for Partial Summary Judgment at p. 1.)

2

of foreman on or about January 21, 2001.[2] (*See* Plaintiffs' Memorandum in Support of Motion for Partial Summary Judgment, Document 29, at pp. 1-2.) Prior to McCurry's selection for the foreman position, Superintendant Nick Knight would require Plaintiff Barnett to perform all the foreman's duties when Barnett's foreman was not present at the job site. (*Id.* at p. 2; Plaintiffs' Evidentiary Submission in Support of Motions for Summary Judgment, Volume Two, Ex. 20.) Barnett expressed his interest to Nick Knight in being considered for the foreman position. (Barnett Aff. at p. 152.) Mr. Knight told Barnett that he would consider Barnett for the position when one became available. (*Id.* at p. 155.)

According to Reynolds' pay records, McCurry was earning $9.00 per hour in 2000, while Plaintiff Barnett was earning $12.00 per hour in 2000.[3] (Plaintiff's Evidentiary Submission in Support of Motions for Summary Judgment, Volume Two, Ex. 27.)

Plaintiff Barnett submitted an affidavit stating that he was "qualified to perform the task of foreman at Reynolds, Inc. While [he] was at Reynolds, [he] operated equipment, such as trackhoes and loaders at the instruction of [his] supervisors, Dustin Ferris, Danny Morgan, and David McCurry. [Barnett] was capable of handling payroll and keeping track of the amount of work being done. [He] was also capable of communicating with inspectors and dealing with the public, which [he] was actually required to do on several occasions at Reynolds." (Plaintiffs'

---

[2] McCurry was a laborer at the time he was selected to be foreman. Plaintiff Barnett notes that one of the position requirements for foreman was a valid driver's license. (Williams Aff. at 39-40.) While McCurry was promoted without having a valid driver's license, Defendant notes that, in the past, it had also promoted at least one African-American employee who did not then possess a driver's license but who was accommodated by the Defendant by having another employee drive the company work truck. (Knight Aff. at p. 62; Defendant's Brief in Opposition to Plaintiff's Motions for Summary Judgment, Document 44, at p. 21.)

[3] Barnett received a 25-cent per hour pay raise to $12.25 in 2001.

Evidentiary Submission in Support of Motions for Summary Judgment, Volume Two, Ex. 20.) Plaintiff Barnett testified that Dustin Ferris was training Plaintiff to become a foreman. (Barnett Aff. at pp. 153-154.) Likewise, Plaintiff Barnett was never informed by Defendant that he was unqualified to perform the employment positions he held (truck driver and laborer) or the foreman's position he sought to hold.

Defendant Reynolds identified Bill Kessler (Reynolds' Director of Risk Management) and Mikah Williams (an area manager for Defendant Reynolds) as its only two Fed. R. Civ. P. 30(b)(6) witnesses. (*See* Kessler Aff. at p. 10 and Williams Aff. at p. 12.) Neither 30(b)(6) witness could testify that Plaintiff Barnett was more or less qualified for the position than Mr. McCurry. (Kessler Aff. at p. 44.) For example, Mr. Kessler testified that he did not know why Mr. McCurry was promoted to the foreman position and Kessler further testified that he had no idea whether Mr. McCurry was more or less qualified for the foreman position than Plaintiff Barnett. (*Id.*) Likewise, Mr. Williams testified that he did not know whether Mr. McCurry was more or less qualified than Plaintiff Barnett for the position of foreman. (Williams Aff. at p. 119.) On a related note, other Plaintiffs in this lawsuit testified that Defendant promoted white employees over equally qualified black employees.[4] (*See, e.g.*, Rose Aff. at pp. 75-76.)

When McCurry was selected for the position, Plaintiff Barnett sought an explanation from Nick Knight and area manager Mikah Williams regarding the promotion selection decision of Mr. McCurry. (Barnett Aff. at pp. 57-59, 63-64.) Though Williams allegedly told Barnett

---

[4] Defendant objects to Plaintiffs' claim of discrimination in promotion. Defendant asserts that Reynolds "has had several African-Americans promoted to the position of foreman, one of whom did not then possess a driver's license but who was accommodated by the Defendant by having another employee drive the company work truck." (Knight Aff. at p. 62; Defendant's Brief in Opposition to Plaintiff's Motions for Summary Judgment, Document 44, at p. 21.)

that he would investigate the situation, Williams admits that he doesn't recall speaking with the superintendents about McCurry's selection as foreman. (Williams Aff. at p. 111.)

Barnett asserts that he was not given the opportunity to apply for the foreman position as the position was never formally posted. (Williams Aff. at p. 82.) There is no job posting or any other formal procedure for informing Defendant's employees of job openings. (*Id.*) Furthermore, there is no policy at Reynolds to require potential candidates to apply for promotions. (*Id.* at 82-83.) Nonetheless, based on the fact that Barnett expressed his interest in the position to Mr. Knight, it is clear that Barnett's supervisors were aware that Barnett was interested in being considered the foreman position.

## II. APPLICABLE LAW

Summary judgment is appropriate where the movant demonstrates that there is no genuine issue as to any material fact and that, based upon the undisputed facts, the movant is entitled to judgment as a matter of law. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990); *see also* Fed. R. Civ. P. 56(c). The party requesting summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which the moving party believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (*quoting* Fed. R. Civ. P. 56(c)). When ruling on a motion for summary judgment, the court must view the facts in a light favorable to the nonmoving party.[5] *See, e.g.,*

---

[5] "The district court should 'resolve all reasonable doubts about the facts in favor of the non-movant' ... and draw 'all justifiable inferences ... in his favor ....'" *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991). "All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *See Hayden v.*

*Raney v. Vinson Guard Service*, 120 F.3d 1192, 1196 (11th Cir. 1997). The Eleventh Circuit has held that evidence that is merely colorable, conclusory, or conjectural does not create a genuine issue of material fact. *See, e.g.*, *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988); *Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989).

### III. ANALYSIS

**Plaintiff Barnett's Race Discrimination Claim in Promotion**

Federal law governing allegations of discrimination in the workplace is well settled. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). There is a three-part test under the traditional *McDonnell Douglas* burden-shifting analysis. First, a Plaintiff must establish a *prima facie* case of discrimination. Next, Defendant must articulate a legitimate, non-discriminatory reason for the challenged decision. *See, e.g, McDonnell Douglas Corp. v. Green*, 411 U.S. at 803; *see also Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Finally, Plaintiff must present evidence that Defendant's reason is a pretext for unlawful discrimination. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *McDonnell Douglas Corp v. Green*, 411 U.S. 792, 802-04 (1973); *Reeves v. Sanderson Plumbing Prod., Inc.*, 120 S. Ct. 2097, 2108-09 (2000).

In order to establish a *prima facie* case of race discrimination, Plaintiff must show that: (1) he is a member of a protected class; (2) he was qualified for the position; (3) he was terminated or disciplined; and (4) similarly situated employees outside of the protected class were treated more favorably, or, in the case of discharge, that Defendant replaced Plaintiff with

---

*First Nat'l Bank of Mt. Pleasant*, 595 F.2d 994, 996-97 (5th Cir. 1979).

6

an individual outside of the protected class. *McDonnell Douglas Corp v. Green*, 411 U.S. at 802.

It is relevant to note that the Eleventh Circuit has adopted a variation of the test articulated by the Supreme Court for Title VII claims in *McDonnell Douglas Corp. v. Green*. A Plaintiff successfully establishes a *prima facie* case of discrimination where Plaintiff demonstrates: (1) that he was in a protected group and was adversely affected by an employment decision; (2) that he was qualified for his current position or to assume another position; and (3) evidence by which a fact finder could reasonably conclude that the employer intended to discriminate on the basis of race in reaching that decision. *See, e.g., Jameson v. Arrow Company*, 75 F.3d 1528, 1531-32 (11th Cir. 1996); *Earley v. Champion Intern Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

Applying these standards to the case at bar, Plaintiffs successfully has established a *prima facie* case of discrimination in promotion. First, Plaintiff Barnett is a member of a protected class. Next, this Court finds that Plaintiff was qualified for the position of foreman. Furthermore, Plaintiff was being trained by one of his supervisors for the foreman position. Moreover, it is clear that Plaintiff's supervisors were aware of Plaintiff's interest in the foreman position. Plaintiff conveyed his interest in the foreman position to a supervisor who assured Plaintiff that he would be considered for the position when it became available.

Nonetheless, Caucasian employee David McCurry was selected for the foreman position. Neither of Defendant's two Fed. R. Civ. P. 30(b)(6) corporate representatives (Mikah Williams and Bill Kessler) could provide testimony to suggest that Plaintiff Barnett was any more or less qualified for the foreman position than Mr. McCurry.

Following the award of the foreman position to Mr. McCurry, Plaintiff asked for an explanation as to why McCurry – and not Plaintiff – was awarded the job. Plaintiff requested an explanation from Plaintiff's supervisors, Nick Knight and Mikah Williams, regarding the reasoning behind the promotion selection decision of Mr. McCurry. (Barnett Aff. at pp. 57-59, 63-64.) Though Williams allegedly told Barnett that he would investigate the situation, Williams admits that he doesn't recall speaking with the superintendents about McCurry's selection as foreman. (Williams Aff. at p. 111.)

Based on this sequence of events, coupled with the utter failure by Defendant to produce any evidence of a legitimate, non-discriminatory reason for Plaintiff's non-promotion, this Court concludes that it is reasonable to find that unlawful racial discrimination factored into Defendant's decision to select Mr. McCurry instead of Plaintiff Barnett. Accordingly, Plaintiff Barnett's Motion for Partial Summary Judgment on Promotion is due to be **GRANTED**.

## CONCLUSION

For the reasons discussed herein, this Court will **GRANT** Plaintiff Ernest Barnett's Motion for Partial Summary Judgment on Promotion Claims (Document 28) by separate order.

DONE this 30th day of January, 2003.

Chief United States District Judge
U.W. Clemon